## John A. Parker *versus* John Macomber.

Where the individual note of a partner, payable to the firm of which he was a member, remained in the possession of such firm till it was overdue, it was *held*, that another partner could not, after the dissolution of the partnership, negotiate it in the partnership name, although he was authorized to settle its concerns.

But where the individual note of a partner, made after the dissolution of the partnership, was transferred by the holder to the firm in payment of a debt, it was *held*, that such note, being payable to bearer, might be legally transferred to a third person, by another partner who was authorized to settle the concerns of the partnership.

This was assumpsit upon two promissory notes, against the maker. The cause was tried before *Morton* J.

The first note, which bore the date of November 3d, 1828, was for the sum of $ 500, and was payable on demand, with interest, to the firm of John Macomber & Co. At that time, the firm consisted of the defendant, Bradford Howland, Daniel Howland junior, and Laban Thacher. About a year afterwards, Thacher assigned his interest in the partnership property to the other members of the firm. On December 5th, 1832, an agreement was entered into by the remaining partners for the dissolution of the partnership, and notice of such dissolution was published on the 7th and other days of the same month, in a newspaper printed in New Bedford, where the plaintiff resided. B. & D. Howland junior were authorized to collect the debts and settle the business of the copartnership. At the time of the dissolution of that partnership, Bradford and Daniel Howland junior were partners under the firm of B. & D. Howland junior, and this copartnership continued in existence after the dissolution of the partnership of John Macomber & Co.

In March, 1834, the note in question was with the partnership property, and had not then been indorsed or negotiated. It was afterward indorsed in the name of John Macomber & Co., and in the handwriting of Bradford Howland, to the plaintiff.

It appeared from the testimony of Daniel Howland junior, that the concerns of the firm of John Macomber & Co. were not settled or adjusted among its members.

The second note, which bore the date of December 10th, 1832, was for the sum of $ 613·61, and was payable to James H. Howland or order, on demand, with interest. This. note after being indorsed to bearer, without recourse, by James H. Howland, was passed by him to John Macomber & Co. on the day of the date, or the next day, in part payment of a debt due from him ; and it was then credited to him in their account against him.

Daniel, Howland junior testified, that he never assigned or parted with his interest in either of the notes in question, and never authorized any person to negotiate or part with either of them in any manner whatever. The plaintiff objected to the admission of this witness, on the ground, that he must be presumed to have given currency to these notes, and therefore ought not to be permitted to impeach the right of the plaintiff, who was an innocent indorsee or holder, to maintain an action thereon against the promiser.

Thacher Thomas testified, that he was clerk in the store of John Macomber & Co. from October 1831, to the time of the dissolution of that partnership, in December 1832 ; that afterward he was employed in the same store, twelve or fifteen months, by Bradford Howland ; that the notes in question were attached by wafers to the note-book of John Macomber & Co., and continued so attached for more than twelve months after that partnership was dissolved.

The defendant resisted the payment of the first mentioned note, upon the ground, that he did not indorse or negotiate it, and had never authorized any other person to do so, and that he was still the owner of one undivided third part thereof, in common with Bradford Howland and Daniel Howland junior. And he resisted the payment of the other note, upon the ground that he was the owner of one undivided third part thereof, as tenant in common with Bradford and Daniel Howland junior, as belonging to the partnership effects of John Macomber & Co., and also that no person had ever been authorized by him to assign or dispose of this note.

The plaintiff contended, that the second note, having been received by B. & D. Howland junior, after the dissolution of the copartnership of John Macomber & Co., and in the settle-

Parker<br>
v.<br>
Macomber.

ment of the concerns of that company, became assets in their hands, which they had disposed of to the plaintiff, as they had a right to do, and that the act of either of them was the act of both, the firm of B. & D. Howland junior having been authorized to settle the business of John Macomber & Co.

If the Court should be of opinion, that the plaintiff could maintain an action upon either or both of the notes, the defendant was to be defaulted and judgment rendered accordingly ; but if the plaintiff could not recover upon either of the notes, he was to be nonsuited.

*Coffin* and *Clifford*, for the plaintiff.

*Oct.* 28th.

*A. Bassett* and *Ezra Bassett*, for the defendant. We contend : 1. that the first note was discredited at the time when it was negotiated to the plaintiff, and, therefore, that the defendant might avail himself of the same equitable defences to which the note would be liable as between the original parties ; *Ayer* v. *Hutchins*, 4 Mass. R. 370 ; *Lansing* v. *Gaine*, 2 Johns. R. 300 ; 2. that the payees of such note could not have maintained an action against the defendant at any time, because he would have been both plaintiff and defendant in such action ; 3. that the defendant was the owner of one third of such note, and had never parted with his interest therein, and that, therefore, the payees could not have recovered of him at common law ; 4. that the note was not legally transferred, a partner not being authorized to negotiate notes in the name of the firm after its dissolution, although intrusted with the settlement of its concerns ; *Abel* v. *Sutton*, 3 Esp. R. 108 ; *Ramsbottom* v. *Lewis*, 1 Campb. 279 ; *Rosekrans* v. *Van Antwerp*, 4 Johns. R. 228 ; and 5. that when the second note was transferred to John Macomber & Co., it lost its negotiability, being in effect paid.

SHAW C. J. delivered the opinion of the Court. The plaintiff sues as indorsee of two promissory notes, charging the defendant as promiser. As the circumstances of the two notes are entirely distinct, it will be necessary to consider them separately.

*Oct.* 29th

The first note was made by the defendant as promiser, payable to a firm, of which he was one of the partners, and remained unpaid, and neither negotiated nor indorsed, till after

the dissolution of the partnership to whom it was payable. It was also negotiated and must have come to the plaintiff long after it had become due, and as a dishonored note ; and he was put upon his guard, by this fact apparent on the face of the note. It is, therefore, subject to all the equitable defences to which it would be liable as between original parties. It then appears, that a general dissolution of this partnership took place, and notice thereof was given in December, 1832, about four years after the note in question had been due ; and two of the former partners were authorized in general terms, to collect the debts and settle the business of the firm. The note in question, unindorsed, was left in their custody with the other effects of the late firm. It was afterwards indorsed by one of the partners who were thus authorized to settle, in the name of the late firm, and under that indorsement came into the hands of the plaintiff. We consider it wholly immaterial, whether this was done with or without the consent of the other partner, and, therefore, the testimony of Daniel Howland junior, which was objected to, was immaterial.

Under these circumstances, we are all of opinion, that Bradford Howland had no authority, by the indorsement of the name of the late firm on the note, to transfer and effectually pass a legal title in the note, and that the plaintiff derived no title under such indorsement, taking it, as he does, as a dishonored note. The indorsement was a new contract, made by one in the name of the firm after a dissolution. No such authority belonged to one or two partners after a dissolution of the partnership, by the general rules of the mercantile law, arising out of their relation as partners ; and we think it equally clear, that no such authority was conferred by the agreement of dissolution and notice, authorizing them to collect the debts and settle and close the concern. It was stated in argument, that as the defendant knew, that this note was outstanding against himself, when the dissolution took place, and the authority was given to the two other partners to collect the debts, and pay the demands against the firm, he must be presumed to have intended to give them an authority to negotiate this note. But we cannot perceive the correctness of this inference Were it sound, as each partner must be presumed to know of

all the negotiable bills and drafts due to the firm, and unindorsed at the time of the dissolution, he must be presumed to have intended to give an authority to negotiate them in the name of the firm. But if this were so, the general rule of law would be, that an authority to settle the business, would be of course an authority to indorse negotiable securities; but the general rule is clearly otherwise.

Some reasons, which would not be applicable to the note of a third person, apply with great force to restrain the negotiation of a note held by the firm against one of the partners, especially a note long overdue.

In the hands of the firm it was merely a voucher for an item in account, between the firm and one of its members, and it cannot be presumed, without very explicit words, that it was intended to give an authority to any of the partners after dissolution, to negotiate such a note, and thus render the promiser liable to the action of a third person. If it be said, that the proceeds may be needed to pay the debts of the firm, the answer, we think, is plain. The promiser on this note was liable with the other partners, for all the debts of the firm, independently of this note; and as between the partners themselves, if upon a settlement of the partnership account, on which Macomber, the maker of this note, should be debited for the amount of it, there should be a balance against him, their remedy would be by a bill in equity. Under the circumstances, the Court are of opinion, that the plaintiff has no cause of action on this note and indorsement.

I beg to be understood as not intending to express an opinion, that where a note is given by one member of a firm, payable to his firm, that they may not indorse it and negotiate and put it in circulation, and that a party taking it in due course of business cannot maintain an action on it, on the supposed objection, that in its origin, it was payable to a firm, of which he was a member, and which firm could have maintained no action against him, on the note. The reason why no action could be maintained in that case, is a mere technical one, namely, that a man cannot be plaintiff and defendant in the same action; but where the technical impediment is removed by an actual indorsement and negotiation, made whilst the authority so to in-

dorse in the name of the firm continues, the holder may claim a valid title through such indorsement of the firm.

The other note stands on a different footing. It was a note made by the defendant, after the dissolution of the partnership, payable to James H. Howland or his order. It was indorsed by Howland, so as to be payable to bearer without recourse to him, and was passed to the two Howlands in part satisfaction of the debt of Howland, due to the late firm of Macomber & Co. ; and he had credit for it, as such payment. It is contended, that by this indorsement, delivery and payment, the property in the note vested in all the members of the late firm, and though it was under a blank indorsement, it could not be passed by delivery, so as to vest a valid title in the holder, without the act of all the partners. But we are of opinion, that this defence cannot be maintained. Being under a blank indorsement and passing by delivery, the title vested in any person or persons legally becoming the holders for value. Now we think the authority given to the two partners, the Howlands, to collect the debts and settle the affairs of the late firm, gave them authority to receive negotiable notes and drafts, as a means of obtaining payments. If so, they must be deemed to have received this note, as agents to settle ; they received it in their own right and the property vested in them. This being the case, as they would take merchandise, bank-stock, or other articles, affording the means of raising money, and getting in the debts, they had a right to dispose of the property, for the same purpose ; and it being a mercantile agency, each had the requisite authority. As they took the note under a blank indorsement, and it was in a condition to pass by a mere delivery, no indorsement of the firm was necessary ; and the want of author ity, arising from a want of legal power to make such indorsement, applicable to the case of the other note, does not apply to this.

If it be said, that they, being agents, took this note for the use and benefit of all the members of the late firm, and so the title vested in them, we think it is necessary to distinguish between the legal and the beneficial interest. Undoubtedly the beneficial interest was in the members of the late firm , and the agents were bound to render an account of the property and apply the proceeds to their benefit. But this is quite con-

sistent with their taking a legal interest themselves, in the security, in the same manner as if they had taken goods, bank notes, or other property, to be turned into money and accounted for, pursuant to the trust and authority reposed in them for that purpose.

We are, therefore, of opinion, that the property in this note did not vest in the members of the late firm, of which the promiser was one ; that he did not become a joint proprietor, or tenant in common, or acquire any property in the note specifically ; that the Howlands, or either of them, taking it as they did, had a sufficient authority to negotiate and transfer it by delivery, and that though the plaintiff acquired it when overdue, as there is no defence to it, he has a good and legal right to recover the amount of it in this action.